UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KYLE B. RICHARDS et al.,

                        Plaintiffs,                    Case No. 1:14-cv-908

v.                                      Honorable Robert J. Jonker

DANIEL HEYNS et al.,

                        Defendants.

_____/

## OPINION

This is a civil rights action brought by two state prisoners under 42 U.S.C. § 1983. Plaintiff Gilde has been dismissed for lack of prosecution. The Court has granted Plaintiff Richards leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed as frivolous and/or for failure to state a claim.

**Factual Allegations**

Plaintiff Kyle B. Richards is incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF).  Most of the defendants in this action are employees of the MDOC ("MDOC Defendants"): MDOC Director Daniel Heyns, ICF Deputy Wardens Willie Smith and Erica Huss; Resident Unit Manager (RUM) Mike Smith; and Assistant Resident Unit Supervisor (ARUS) (unknown) Haynes.  The other defendants are state police officers (Colonel Kriste Kibbey Etue and Lieutenant Colonel Gary Gorski) and Ionia County prosecutors (Ronald Schafer and Kyle Butler).

Plaintiff Richards is an active litigant in the federal courts in the State of Michigan, having filed at least fourteen civil rights actions in the Western District alone since 2012.  On numerous occasions, his complaints have been dismissed as frivolous or for failure to state a claim. *See, e.g.*, *Richards et al. v. Heinz et al.*, No. 1:12-cv-1197 (W.D. Mich. Mar. 5, 2013); *Richards et al. v. Heyns et al.*, No. 1:12-cv-1269 (W.D. Mich. Jan. 11, 2013); *Richards v. Smith et al.*, No. 1:11-cv-10929 (E.D. Mich. May 16, 2011); *Richards v. Swartz et al.*, No. 2:10-cv-13759 (E.D. Mich. Oct. 14, 2010); *Richards v. Schuster et al.*, No. 2:10-cv-10100 (E.D. Mich. July 8, 2010).

It is not unusual for Plaintiff to make extreme allegations of misconduct by prison officials, or to describe prison conditions that cause him to suffer a variety of alarmingly severe physical ailments.  In addition, some prison conditions, and some forms of mistreatment, seem to follow him from one prison facility to another.  Some of his allegations about his present conditions at ICF are curiously similar to his allegations in other actions regarding his conditions at Bellamy Creek Correctional Facility (IBC) in 2012.  For instance, when Plaintiff was incarcerated at IBC, he alleged that he was suffering from fatigue, nausea, headaches, vomiting, and dangerous weight loss

because prison officials were depriving him of meals and because the food portions that were not adequate to sustain him. *See Richards v. Snyder*, No. 1:12-cv-299 (W.D. Mich.); *Richards et al. v. Heyns*, No. 1:12-cv-1134 (W.D. Mich.), docket #1, Compl. 3.   Plaintiff now makes similar allegations about his conditions at ICF.

Similarly, Plaintiff has filed several actions complaining that he does not receive adequate "sensory stimulation."   While he was at IBC, he complained that he could not watch television or listen to the radio. *See, e.g.*, *Richards et al. v. Heyns et al.*, No. 1:12-cv-1134 (W.D. Mich.); *Richards et al. v. Heyns et al.*, No. 1:12-cv-1262 (W.D. Mich.).   These activities might be considered a luxury for some, but Plaintiff contends that they are essential for his survival; without them, he suffers from an incredible array of life-threatening conditions, including: seizures, heart palpitations, ulcers, stomach pains, internal bleeding, vomiting, and blood in his urine. *See Richards v. Snyder et al.*, No. 1:14-cv-299 (W.D. Mich.), docket #1, Compl. 7-11.   Although books are available to him for recreational reading, they allegedly pose a detrimental risk to his health: the amount of concentration required to read them might induce a life-threatening seizure. *Id.* at 11; *see also Richards et al. v. Snyder et al.*, No. 1:14-cv-84 (W.D. Mich.), docket #35, Am. Compl. 6, 15, 17 (complaining about a lack of pornographic publications and "recreational appliances" at IBC; books were not adequate because they could trigger seizures that would "likely kill" Plaintiff). Plaintiff now makes similar allegations about a lack of adequate sensory stimulation at ICF.

Almost all of the allegations in the instant action are stated on behalf of "Plaintiffs," referring to both Plaintiff Richards and Plaintiff Gilde.   At this stage of the proceedings, however, Plaintiff Gilde has been dismissed from the action.   Consequently, his claims have also been dismissed.   Plaintiff Richards lacks standing to assert the constitutional rights of prisoner Gilde, or

any other person. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims; he may not assert claims on behalf of others. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Thus, the Court will consider only those claims and allegations that pertain to Plaintiff Richards.

In "Claim 1" of the complaint, Plaintiff contends that Director Heyns, Deputy Wardens Smith and Huss, ARUS Haynes, and RUM Smith have physically abused him and prisoner Gilde on a "daily" basis, through physical beatings and the misuse of belly chains and handcuffs. (Compl., docket #1, Page ID##3, 7.) "Every day," Plaintiff contends, he and Gilde are placed in cuffs and shackles and removed from their cells so that Defendants can "brutally and sadistically beat[]" them. (*Id.* at Page ID#7.) On a "daily" basis, Defendants have "punched, kicked, stomped on, and shoved or dragged [Plaintiffs] around . . . with the assistance of their officers, capt[ai]ns, ser[]geants, and l[ieu]tenants." (*Id.*) Through their "malicious handling" Plaintiff's belly chains and handcuffs on a daily basis, Defendants have allegedly dislocated Plaintiff's shoulder, inflicted "severe" cuts on his wrist, and caused him to experience "internal bleeding" and blood loss to his limbs, which "endanger[s]" his "vital organs." (*Id.*) Plaintiff contends that Defendants' conduct violates his rights under the Eighth and Fourteenth Amendments, and constitutes torture under 18 U.S.C. § 2340.

In "Claim 2," Plaintiff asserts that MDOC Defendants are responsible for unsafe conditions at ICF because the facility is not adequately monitored by security cameras, which are able to observe only twenty percent of his unit. (*Id.* at Page ID#8.) MDOC Defendants allegedly

use the unobserved areas, such as the corridors and showers, to "brutalize" and "maliciously assault" prisoners.  (*Id.*)  The Governor of Michigan has allegedly ordered a "security upgrade" at ICF due to four prisoner escapes, three suicides, and two murders by prison guards in the year preceding the filing of the complaint.  (*Id.*)  Plaintiff claims that these conditions violate the Eighth Amendment.

In "Claim 3," Plaintiff contends that MDOC Defendants have maintained unsanitary conditions at ICF.  (*Id.* at Page ID#9.)  Plaintiff asserts that the facility has become "an ecosystem of various insects, rodents, rats, mice, and other natural wildlife that occup[]y the interior . . . ventilation systems."  (*Id.*)  The ventilation ducts have the smell of skunk odor, and Plaintiff alleges that they contain "'black mold' and various other molds" that "release mold spores" and cause "respiratory problems" for Plaintiff.  (*Id.*)  In addition, excessive dust in the ventilation system has blocked the flow of clean air and "damaged" Plaintiff's respiratory system, causing "bouts of frequent suff[o]cation."  (*Id.*)  Also, bee hives and wasp nests infest "most" cell windows in the prison, and water at the facility, which contains "E. coli" bacteria, is "tainted dark brown and green colors[.]"  (*Id.*)

In "Claim 4," Plaintiff contends that MDOC Defendants have deprived him of adequate "sensory stimulation" because he spends "hours" each day in his cell without access to a television, electronic games, or pornography.  (*Id.* at Page ID#10.)  The lack of adequate sensory stimulation has caused "extreme degrees of stress," resulting in high blood pressure, hypertension, heart palpitations, and other symptoms of "stress related injury."  (*Id.*)

In "Claim 5," Plaintiff alleges that the food portions at ICF are not adequate to sustain him. (*Id.*)  He has lost "excess" weight and experiences fatigue and lethargy from this "substan[t]ial and dangerous" weight loss.  (*Id.*)  In addition, on "many" days, Plaintiff and other prisoners are not

- 5 -

fed a "majority" of meals by MDOC Defendants.  (*Id.*)  According to Plaintiff, "staff / Defendants" cover up their actions by marking in the prison log that the prisoner refused his meal tray.  (*Id.*) Plaintiff contends that this "forced starvation" violates the Eighth and Fourteenth Amendments and constitutes torture under 18 U.S.C. § 2340.

In "Claim 6," Plaintiff contends that he has attempted to file criminal complaints with the Michigan State Police and the FBI, without success.  (*Id.* at Page ID#11.)  Officers Etue and Gorski allegedly failed to create an effective system for the police to receive and review prisoner complaints, thereby depriving Plaintiff of the right to file a criminal complaint and his right under the First Amendment to petition for redress of grievances.  Plaintiff also contends that he has been denied equal protection under the law because he has been deprived of the right to file a criminal complaint solely because he is a state prisoner.

Next, in "Claim 7," Plaintiff contends that Prosecutors Schafer and Butler have destroyed or concealed evidence about "ongoing police brutality, corruption, and assaults on prisoners," and about officers who commit perjury and bring false charges against prisoners.  (*Id.* at Page ID#12.)  For instance, the complaint asserts that "Plaintiff" (it is not clear which one) was convicted in "case 14-K-15993-FH" based on false testimony because "favorable" evidence was lost or destroyed.  (*Id.* at Page ID#13.)  Plaintiff also complains that Schafer and Butler have failed to "register or file" complaints sent to them about criminal conduct.  (*Id.*)

As relief for the foregoing claims, Plaintiff seeks damages and an injunction requiring (1) an upgrade in the prison's security system to cover blind spots, including all entrances, corridors and showers; (2) the condemnation and destruction of ICF due to black mold, E. coli and other health hazards, and (3) an amendment to the MDOC property policy so that the "PS3, PS4, Xbox One, and

a variety of other electronic games" are made part of the list of property available for purchase and possession by prisoners.  (*Id.* at Page ID#14.)

### Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Claim 1

Plaintiff claims that, every day, the MDOC Defendants place him and prisoner Gilde in handcuffs and belly chains, bring them out of their cells, and physically beat them. As a result of "malicious handling" of the belly chains and handcuffs, Plaintiff has sustained a dislocated shoulder, severe cuts on his wrist, and blood loss to his limbs, which endangers his "vital organs." (Compl., docket #1, Page ID#7.) The Court finds these allegations to be factually frivolous.

Whether a complaint is factually frivolous under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *see Iqbal*, 556 U.S. at 678, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28. Claims that are factually frivolous include those that are "clearly baseless," "fanciful," "fantastic,"

or "delusional." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (citations omitted). "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.*

The Court finds it wholly incredible that all of the MDOC Defendants, which includes the Director of the MDOC and two deputy wardens at ICF, set aside time each day to physically abuse Plaintiff Richards in the presence of numerous other officials. Not surprisingly, Plaintiff does not describe any particular incident in which this occurred. Nor does he identify any injuries from being kicked, punched, and stomped on by Defendants on a daily basis. Plaintiff claims that he has sustained a dislocated shoulder, internal bleeding, and cuts on his wrist from being mishandled by the belly chains and handcuffs, but Plaintiff does not indicate when this occurred or how any of the individual Defendants is responsible for these injuries. The Court finds it highly unlikely that all of the MDOC Defendants would have been involved in the same incident, and absolutely incredible that all of them would have been involved in multiple incidents occurring repeatedly on a daily basis. The Court also notes that Plaintiff's assertion that his *organs* are threatened by loss of circulation to his *limbs*, is patently absurd. In short, Plaintiff's contention that he has been subjected to daily physical abuse by all of the MDOC Defendants is too incredible to be accepted as true. Even accepting Plaintiff's contention that he has sustained some injuries, his allegations are too vague to support a plausible claim under § 1983 against any particular Defendant.

To the extent that Plaintiff relies on 18 U.S.C. § 2340 as a basis for relief, he does not state a cognizable claim. That statute criminalizes torture occurring outside the United States; it does not provide for civil redress for torture occurring within the United States. *Renkel v. United States*,

- 9 -

456 F.3d 640, 644-45 (6th Cir. 2006). Thus, it does not provide a cause of action for the harm alleged by Plaintiff. Consequently, Claim 1 of the complaint will be dismissed because it is frivolous and fails to state a claim.

### B.  Claim 2

Plaintiff alleges that the MDOC Defendants have permitted unsafe prison conditions at ICF because the security cameras do not provide sufficient coverage of the unit. (Compl., docket #1, Page ID#8.) Plaintiff asserts that prison officials have used areas not covered by security cameras, including the corridors and showers, to "brutalize" prisoners. (*Id.*) Plaintiff alleges that several prisoners escaped from ICF and two prisoners were murdered by prison guards in the year preceding the complaint.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that a defendant was deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Plaintiff's claim fails because he has not alleged facts indicating that he is at a significant risk of injury without the camera coverage. Even if true, the fact that two other prisoners were murdered by prison guards at the same facility does not mean that Plaintiff himself is at risk of similar harm. To the extent Plaintiff contends that additional security cameras would have prevented the daily abuse alleged in Claim 1, his claim is frivolous for the reasons stated *supra*. Consequently, Claim 2 will be dismissed for failure to state a claim.

### C. Claim 3

Plaintiff also complains about the ventilation system and water at his prison facility, and the general conditions of his confinement. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety *and* that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Arguably, Plaintiff's assertions that the ventilation system at ICF is a dust-clogged, mold-infested haven for wildlife, and that water at the facility is contaminated with E. coli, are too incredible to be accepted as true.  Plaintiff does not offer a plausible basis for his conclusion that animals and mold are present in the ventilation ducts or that harmful bacteria is present in the water. Even if he detected an unpleasant odor from the ventilation system, or observed discolored water somewhere in the facility, it does not necessarily follow that he is being exposed to black mold, E. coli, or any other organism that poses a substantial risk of harm to his health.  Indeed, Plaintiff's allegations regarding a risk of harm from these or other conditions are completely vague.  He asserts that his respiratory system has been "damaged," that he has experienced respiratory "problems," and that he suffers episodes of "suffocation" (Compl., docket #1, Page ID#9), but he offers no specific facts describing these ailments or any circumstances establishing a link between them and the prison conditions at issue.  Nor does he offer any facts indicating that the mold, water or bee-infested cells pose a substantial risk of serious harm.

Moreover, even assuming that these allegations are sufficient to satisfy the objective component of an Eighth Amendment claim, they are not sufficient to satisfy the subjective component for a claim against Defendants.  Plaintiff does not allege facts from which to infer that the MDOC Defendants were aware of, and deliberately indifferent to, his health or safety.  In a supplement to the complaint, Plaintiff contends that Director Heyns and Deputy Warden Smith were aware of the E. coli and the black mold because he filed a complaint about them in April 2014.  (*See* Suppl. to Compl., docket #7, Page ID#57.)  In support of this contention, Plaintiff refers to grievance documents attached to his supplemental pleading.  (*See* Exs. F & G, docket #7,  Page ID##64-65.) These documents indicate that a grievance regarding E. coli and black mold was rejected at Step I

of the grievance process because it was duplicative of another grievance; Deputy Warden Smith upheld this response at Step II of the grievance appeal process, and a grievance specialist upheld it at Step III.  (*See id.*)  The fact that Defendants reviewed and/or denied a prison grievance regarding these issues does not suffice to state a claim, however.

Generally, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Moreover, "[t]he denial of a prisoner's grievance does not by itself support a § 1983 deliberate-indifference claim." *Mitchell v. Hininger*, 553 F. App'x 602, 608 (6th Cir. 2014).  Even if Defendants' subordinates were aware of the conditions that Plaintiff describes and failed to correct them, Defendants may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  In short, because Plaintiff's claim against Defendants is premised on the fact that one or more of them denied or failed to take corrective action in response his grievance, he does not state a claim.

### D. Claim 4

Plaintiff alleges that the MDOC Defendants have deprived him of adequate sensory stimulation because he does not have access to a television, electronic games, or pornography. The Constitution does not give him a right to possess these items while he is in prison. The Eighth amendment only guarantees access to the "minimal civilized measure of life's necessities," such as "food, medical care, or sanitation." *Rhodes*, 452 U.S. at 347-48. Television, electronic games and pornographic materials are not necessities like food, medical care or sanitation, and an absence of these items is not a condition that is "intolerable for prison confinement." *Id.*; *see Coleman v. Governor of Mich.*, 413 F. App'x 866, 875 (6th Cir. 2011) (no constitutional right to access a television); *Hudson v. Lincoln Cnty.*, 39 F. App'x 219, 220 (6th Cir. 2002) (fact that prisoner was housed in a cold segregation unit without access to newspapers or television did not state a viable Eighth Amendment claim); *Smith v. Sapp*, Nos. 97–5642, 97–5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) ("forcing an inmate to live without . . . bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim"); *Dean v. Campbell*, No. 97–5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998) (allegations of "limited recreation opportunities . . . fail to allege facts showing . . . the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim"); *Rahman X v. Morgan*, 300 F.3d 970 (8th Cir. 2002) ("[T]elevision [is] not necessary for a civilized life.").

Plaintiff claims that he needs television, games, and pornographic literature because, without them, he is experiencing high blood pressure, heart palpitations, hypertension and stress-related injury, but these allegations are wholly incredible. Thus, Claim 4 is factually frivolous and fails to state a viable claim.

- 14 -

### E.  Claim 5

Next, Plaintiff alleges that the food portions served at ICF are not adequate for him, causing him to lose "excess" weight and to experience fatigue, headaches and nausea.  In addition, he asserts that the MDOC Defendants "are not feeding [him] many days," he does not receive a "majority" of meals, and "staff / Defendants" cover up their actions by marking in the prison log that Plaintiff refused his meals, thereby violating his rights under the Eighth and Fourteenth Amendments.  (Compl., docket #1, Page ID#10.)

At the outset, the Court notes that Plaintiff's claim is governed by the Eighth Amendment, not the Fourteenth Amendment.  The right to substantive due process under the Fourteenth Amendment "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002).  In *Graham v. Conner*, 490 U.S. 386 (1989), however, the Supreme Court held that "[w]here a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim."  *Id.* at 395.  With regard to a lack of adequate nutrition, the Eighth Amendment provides the explicit textual source of protection.  *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008).  Thus, Plaintiff's claim is governed by the Eighth Amendment.

The Eighth Amendment requires that prisoners be given sufficient food to "maintain normal health." *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977).  But to state a claim, Plaintiff must allege that Defendants were deliberately indifferent to his needs.  *See Farmer*, 511 U.S. at 834.  Plaintiff's claim fails because does not allege facts from which to infer that Defendants

- 15 -

were aware of, and deliberately indifferent to, the fact that he was not receiving adequate nutrition. Nowhere does he allege that Defendants were aware of any significant weight loss, or any of other symptoms resulting from a lack of adequate nourishment.  In the supplement to his complaint, Plaintiff asserts that Director Heyns received a complaint about "malnourishment" on April 25, 2014, but did nothing about it until July 31, 2014, when he "concurred" with the ICF warden. (Suppl. to Compl., docket #7, Page ID#56.)  In support of this allegation, Plaintiff refers to a grievance that he filed on the issue; documents related to that grievance are attached to his supplemental pleadings.  (*See* Exs. B & C, docket #7-3, Page ID##60-61.)  According to those documents, Plaintiff's grievance was rejected at Step I of the grievance process because it contained multiple issues. (*Id.* at Page ID#61.)  Plaintiff appealed that decision, arguing that it contained only one issue: "insufficient contaminated food portions" served by "Arama[r]k" food service.  (*Id.*) Warden Smith upheld the rejection at Step II, and on July 31, 2014, a grievance specialist for the MDOC's Office of Legal Affairs upheld it at Step III.  (*Id.* at Page ID##60-61.)  In other words, Plaintiff's claim is premised on the fact that one or of the Defendants denied or failed to act in response to a grievance related to malnourishment.  For the reasons stated *supra* with respect to Claim 3, these allegations are insufficient to state a claim.

Plaintiff also complains that prison officials withheld certain meals; this claim fails for different reasons: he has not set forth facts from which to infer that Defendants are responsible for that deprivation.  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation

of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Here, Plaintiff has sued a number of supervisory officials at the MDOC, including the Director of the MDOC, the wardens at ICF, a unit supervisor and a unit manager.  He does not identify any conduct by these Defendants as it relates to the provision of his meals; he merely alleges that unidentified Defendants are not feeding him.  It cannot be the case, however, that the Director of the MDOC is personally responsible for the daily distribution of meal trays to Plaintiff and other prisoners, and there are no allegations from which to infer that any of the other supervisory officials sued by Plaintiff, such as ICF wardens Smith and Huss, RUM Smith, and ARUS Haynes, were responsible for this task or were otherwise involved in depriving Plaintiff of any meals.  To state a plausible claim, it is not enough for Plaintiff to allege that he is not receiving food and then conclude that the Director of the MDOC and other supervisory officials must be responsible.  Absent allegations suggesting more than the "mere possibility of misconduct" by Defendants, Plaintiff does not state a claim against them. *See Iqbal*, 556 U.S. at 679. For all the foregoing reasons, the allegations in Claim 5 are wholly inadequate to state a claim.

**F.  Claim 6**

Plaintiff asserts that Michigan State Police Officers Etue and Gorski deprived him of his right under the First Amendment to petition for redress of grievances when they failed to track or respond to his complaints regarding criminal conduct by prison officials.  To the contrary, Plaintiff exercised that right when he filed his complaints.  Plaintiff complains that they did not review or respond to his complaints, but the First Amendment does not require them to do so.  As another court has stated, "No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated . . . ." *White v. City of Toledo*, 217 F. Supp. 2d 838, 841-42 (N.D. Ohio 2002) (citing *DeShaney v. Winnnebago Cnty. Dep't of Social Servs*, 489 U.S. 189, 195 (1989)).  Plaintiff also contends that he has a right to press charges.  Even so, Defendants are not obligated to act on those charges.  It is well established that "[p]rivate citizens, whether or not they are prisoners, . . . cannot compel a criminal investigation or prosecution against another." *Martin v. Kolkonen*, 89 F. App'x 567, 568 (6th Cir. 2004) (citing *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).  This is so because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S.*, 410 U.S. at 619.  Thus, Officers Etue and Gorski did not violate any federal rights by failing to track or respond to Plaintiff's complaints of criminal activity.

Plaintiff also contends that Etue and Gorski denied him equal protection under the law solely because he is a prisoner, but these allegations are unsupported.  The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  A state practice generally will not require strict scrutiny

- 18 -

unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not allege that he is a member of a suspect class; "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).  In addition, prisoners do not have a right, let alone a fundamental right, to have their criminal complaints reviewed or acted upon by police officers.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is subject to the rational-basis standard of review.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has not alleged any facts from which to infer that non-prisoners were treated differently than him.  He does not allege, for instance, that Defendants maintain a system for registering and reviewing criminal complaints that is not available to prisoners, or that complaints from prisoners are treated differently than those filed by non-prisoners.  His equal protection claim

- 19 -

is wholly conclusory.  For the foregoing reasons, therefore, Plaintiff does not state a claim against Defendants Etue and Gorski.

### G.  Claim 7

Plaintiff states that Prosecutors Schafer and Butler "have acted to cover up and conceal evidence of ongoing police brutality, corruption, and assaults on prisoners by guards," and have destroyed evidence showing "perjury by officers bringing false charges against prisoners." (Compl., docket 31, Page ID#12.)  For the most part, Plaintiff does not explain how any of this conduct concerns him or constitutes a violation of his federal rights.  The fact that Defendants may have engaged in improper or illegal conduct toward others does not give him the right to assert a claim under § 1983.  As indicated *supra*, Plaintiff cannot assert claims on behalf of other individuals.

The complaint offers only one example in which Defendants' conduct may have impacted Plaintiff.  It asserts that in "case 14-K-15993-FH" certain video evidence "was lost and tampered, photographs were altered," and as a result, "Plaintiff" was convicted based on false and perjured testimony.  (Compl., docket #1, Page ID#13.)  It is not clear whether the "Plaintiff" referred to in this portion of the complaint is Plaintiff Richards or Plaintiff Gilde.  Plaintiff Gilde has been dismissed as a party and any allegations pertaining to him are not relevant to Plaintiff Richards' action.  Assuming that these allegations pertain Plaintiff Richards, they lack sufficient detail to state a plausible claim.  Plaintiff offers no facts from which to infer that Defendants were responsible for the loss, destruction or alteration of any evidence, or that this conduct is the cause of any injury to his criminal proceedings.

Moreover, if Defendants concealed or destroyed favorable evidence to obtain a criminal conviction, Plaintiff's claim against them would be barred by *Heck v. Humphrey*, 512 U.S.

- 20 -

477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]."  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original).  In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 486-87 (footnote omitted).  The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.  *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).  In short, assuming that the allegations regarding case number "14-K-15993-FH" apply to Plaintiff, they call into question the validity of his conviction.  Consequently, under the reasoning in *Heck*, his § 1983 claim is barred until that conviction has been reversed or invalidated.

Finally, Plaintiff's claim that Defendants Schafer and Butler failed to "register or file" criminal complaints sent to them by prisoners (*see* Compl., docket #1, Page ID#13) fails for the same reasons as the claim that Officers Etue and Gorski did not file or review his criminal complaints. In short, the Constitution does not require government officials investigate or prosecute Plaintiff's complaints of criminal conduct; he does not have a cognizable interest in the prosecution or non-

prosecution of others.  Thus, Defendants Schafer and Butler did not violate his rights by failing to file or respond to his complaints.  Consequently, Plaintiff does not state a claim against them.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff Richards' action will be dismissed as frivolous and/or for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should either Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless he is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     March 6, 2015            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE